IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHLEEN TAYLOR, Individually and on behalf Of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ADVANCED CALL CENTER TECHNOLOGIES, LLC, <br><br> Defendant. | Case No. 17 C 1805 <br><br> Judge Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's Motion to Compel Arbitration [ECF No. 14]. For the reasons stated herein, the Motion is denied.

**I.  BACKGROUND**

In this putative class action, Plaintiff Kathleen Taylor ("Taylor") alleges that Defendant Advanced Call Center Technologies, LLC ("ACCT") violated Section 1692g(a)(1) of the Fair Debt Collection Practices Act (the "FDCPA") when, in a letter to Taylor seeking to collect debt owed on her Toys "R" Us credit card with Synchrony Bank, it failed to inform her that the account balance may vary based on application of interest. (*See,* ECF No. 1 ("Compl.") ¶¶ 27, 38.) That letter, attached to the Complaint, states:  "This account has been listed with our

office for collection. . . . All payments should be made directly to Synchrony Bank using the enclosed envelope. Do not send payments to this office." (Compl. at Ex. 1.)

Taylor's original Toys "R" Us cardholder agreement with GE Capital Reserve Bank, the predecessor-in-interest to Synchrony, is "governed by federal law and, to the extent state law applies, the laws of Utah without regard to its conflicts of law principles." (ECF No. 14 at Ex. 2 at 4.) The agreement defines the parties as follows: "This Agreement applies to each accountholder approved on the account and each of you is responsible for paying the full amount due, no matter which one uses the account. We may treat each of you as one accountholder and may refer to each of you as 'you' or 'your'. GE Capital Reserve Bank may be referred to as 'we', 'us' or 'our'." (*Id.* at 3.) It also contains the arbitration clause at the heart of ACCT's Motion, which provides: "If either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or Toys 'R' Us-Delaware, Inc. if it relates to your account," with various exceptions inapplicable here. (*Id.* at 4.) The agreement allows GE Capital Reserve Bank to "sell, assign or transfer any or all of our rights under this

Agreement or your account, including our rights to payments." (*Ibid.*)

Invoking this provision in Taylor's cardholder agreement, ACCT seeks to compel Taylor to arbitrate her FDCPA claim. Taylor does not dispute the validity of the arbitration clause nor claim that she opted out of it. Rather, her basis for opposing ACCT's Motion is that ACCT, as a nonsignatory to the cardholder agreement, may not enforce the arbitration provision against her. ACCT, conceding that it is a nonsignatory, instead maintains that it enjoys the benefits of the arbitration provision as Synchrony's agent. Taylor grants that the benefits of contractual terms may sometimes inure to nonsignatories but asserts that ACCT's evidence is insufficient to establish agency. (Naturally, the parties also dispute whether Taylor's FDCPA claim "relates to" her account within the language of the arbitration clause.)

## II. **DISCUSSION**

The Federal Arbitration Act generally requires a court to order arbitration when it finds: (1) a written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal by the opposing party to proceed to arbitration. *Zurich v. Am. Ins. Co. v. Watts Indus.*, *Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Whether the parties entered into

a written agreement to arbitrate is a matter of state contract law. *Hawkins v. Aid Ass'n for Lutherans,* 338 F.3d 801, 806 (7th Cir. 2003). Specifically, whether a nonsignatory (ACCT) can invoke an arbitration agreement to compel a signatory (Taylor) to arbitrate turns on Utah law. *See, Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 630-31 (2009).

The Utah Supreme Court has held that "as a general rule, only parties to the contract may enforce the rights and obligations created by the contract." *Fericks v. Lucy Ann Soffe Trust,* 100 P.3d 1200, 1205-06 (Utah 2004) (citation omitted). However, "under certain circumstances, a nonsignatory to an arbitration agreement can enforce or be bound by an agreement between other parties." *Ellsworth v. American Arbitration Ass'n,* 148 P.3d 983, 989 (Utah 2006); *accord, CollegeAmerica Servs., Inc. v. W. Benefit Sols. LLC,* No. 2:11 C 1208, 2012 WL 1559745, at *2 (D. Utah. May 2, 2012). Those circumstances sort into five groups: "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter-ego; and (5) estoppel." *Ellsworth,* 148 P.3d at 989 n.11; *accord, Nueterra Healthcare Mgmt., LLC v. Parry,* 835 F.Supp.2d 1156, 1162 (D. Utah 2011).

Irrespective of whether ACCT's affidavit evidence confirms its status as Synchrony's agent, Utah law in this circumstance

does not permit ACCT to compel Taylor to arbitrate. Had the parties done their diligence, they doubtless would have discovered *Belnap v. Iasis Healthcare,* 844 F.3d 1272 (10th Cir. 2017), in which the Tenth Circuit Court of Appeals held without dissent that, as a matter of Utah law, "'an agency relationship with a principal to a contract does not give the agent the authority to enforce a contractual term *for the agent's own benefit*.'" *Id.* at 1297 (emphasis in original) (quoting *Fericks*, 100 P.3d at 1206). The *Belnap* court put paid to the defendants' argument, parroted here by ACCT, that the Utah Supreme Court's decision in *Ellsworth* announced an exception to this general rule:

> *Ellsworth* and *Fericks* dealt with fundamentally different issues and do not conflict. In *Ellsworth,* the alleged agent – the nonsignatory defendant Mr. Ellsworth – never attempted to enforce contractual terms for his own benefit. Instead, the signatory plaintiff did, and so the (alleged) agent sought to *avoid* the enforcement of contractual terms against himself. As a result, the Utah Supreme Court never addressed in *Ellsworth* whether an agent can enforce a contractual term for the agent's own benefit; indeed, the *Ellsworth* opinion did not even mention *Fericks.* Thus, we remain bound by *Fericks*'s express statement that an agent acting for its own benefit cannot enforce such a term. As applied here, because Defendants do not dispute that they seek to enforce the Agreement's arbitration provision for their own benefit, we conclude that they cannot compel Dr. Belnap to arbitrate.

*Belnap,* 844 F.3d at 1298 (emphasis in original). Thus, whereas *Ellsworth* and a subsequent case, *Nueterra, supra,* involved a nonsignatory plaintiff claiming benefits under a contract providing for arbitration through a lawsuit against a signatory defendant, *Fericks* and *Belnap* concerned "a nonsignatory *defendant* seeking to enforce the arbitration agreement against a signatory plaintiff." *Id.* at 1296 n.18 (emphasis in original). In identical fashion here, ACCT as a nonsignatory is seeking to conscript the arbitration clause in the GE/Synchrony-Taylor agreement and force Taylor to arbitrate. This, ACCT cannot do.

Although not entirely devoid of authority, ACCT's position is untenable in light of *Fericks* and *Belnap.* To ground the argument that Utah law permits its gambit, ACCT clings to three cases from various district courts within the Ninth Circuit in which ACCT was permitted as a nonsignatory defendant to compel the plaintiff to arbitrate. Two of these, *Lagrone v. Advanced Call Center Techs., LLC,* No. 13 C 2136, 2014 WL 4966738 (W.D. Wash. Oct. 2, 2014) and *St. Pierre v. Advanced Call Center Techs., LLC,* No. 15 C 2415, 2016 WL 6905377 (D. Nev. Nov. 22, 2016), predated *Belnap.* And the third case, *Schnell v. Advanced Call Center Techs., LLC,* No. 2:17 C 1187, Dkt. 20 (C.D. Cal. Apr. 26, 2017), is oblivious to the authoritative *Belnap* decision.

*Lagrone*, relying on statements from *Nueterra*, interprets *Ellsworth* as an exception to *Fericks* in the same fashion discredited by the Tenth Circuit. *See also, Belnap,* 844 F.3d at 1296 n.18 (noting that *Nueterra* discusses *Ellsworth* only "to bolster its ultimate estoppel conclusion by demonstrating its consistency with one of the theories of estoppel that *Ellsworth* previously recognized" – namely, "where a nonsignatory will also be estopped when it receives a direct benefit from the contract which contains the arbitration clause, meaning when the nonsignatory sued the signatory on the agreement after receiving 'direct benefits' but seeks to avoid arbitration") (citations, quotation marks, and alterations omitted). *St. Pierre,* on the other hand, correctly recognizes that *Ellsworth* does not address whether a nonsignatory defendant, simply by dint of its agency status, can wield an arbitration clause against a signatory plaintiff. But *St. Pierre* then neglects to engage *Fericks*, instead predicting that the Utah Supreme Court would compel arbitration in light of the "weight of authority across the nation." *St. Pierre,* 2016 WL 6905377 at *2-4. ACCT's third bit of authority, *Schnell,* similarly ignores *Fericks* and, although decided later in time, neglects to cite *Belnap*. Instead, *Schnell* simply piggybacks on *Lagrone* and *St. Pierre. See, Schnell,* slip op. at 6 ("This Court, like *Lagrone,* is persuaded

that although *Ellsworth* is not perfectly on point, its dicta is evidence of how the Utah Supreme Court would decide the issue. In the alternative, the Court also concurs with *St. Pierre* [by crediting the majority approach]."). Frankly, *Schnell* is bad law.

In sum, Utah Supreme Court precedent as interpreted by the Tenth Circuit makes clear that a nonsignatory's agency relationship with a principal does not authorize the agent to enforce a contractual term, such as an arbitration clause, for the agent's own benefit. The nonsignatory agent here, Defendant ACCT, is seeking to enforce the arbitration clause in the Synchrony-Taylor cardholder agreement for its own benefit – that is, to compel Plaintiff Taylor to arbitrate. As such, the Court denies ACCT's Motion to Compel Arbitration.

### III. CONCLUSION

For the reasons stated herein, Defendant's Motion to Compel Arbitration [ECF No. 14] is denied with prejudice.

**IT IS SO ORDERED.**

                                              Harry D. Leinenweber, Judge
                                              United States District Court

Dated: December 20, 2017